**Anthony Arthur BUSH, Petitioner–Appellant,**

v.

**Cheryl K. PLILER, Warden; Bill Lockyer, Attorney General, Respondents–Appellees.**

No. 04–56348.

United States Court of Appeals, Ninth Circuit.

Feb. 29, 2008.

Kleinfeld, Circuit Judge, filed dissenting opinion.

Anthony Arthur Bush, Calipatria, CA, pro se.

Gary P. Burcham, Esq., San Diego, CA, for Petitioner–Appellant.

Douglas P. Danzig, Esq., AGCA—Office of the California Attorney General, San Diego, CA, for Respondents–Appellees.

Before: KLEINFELD and FISHER, Circuit Judges, and SHADUR, Senior District Judge.*

ORDER GRANTING PETITION FOR REHEARING AND WITHDRAWING MEMORANDUM DISPOSITION

The petition for panel rehearing, filed April 5, 2007, is **GRANTED.** The memorandum disposition filed on December 13, 2005, and appearing at 162 Fed.Appx. 689 (9th Cir.2005) is withdrawn. The superseding memorandum disposition will be filed concurrently with this order. The parties may file an additional petition for rehearing or rehearing en banc. All other pending motions are denied as moot.

Judge Kleinfeld dissents from this order.

MEMORANDUM **

Anthony Bush ("Bush") appeals the district court's denial of his 28 U.S.C. § 2254

---

\* The Honorable Milton I. Shadur, Senior Judge for the United States District Court for the Northern District of Illinois, sitting by designation.

\*\* This disposition is not appropriate for publi-

("Section 2254") petition for a writ of habeas corpus. Bush claims that the State violated his constitutional rights via (1) the trial court's failure to require that the prosecutor provide a race-neutral explanation for using a peremptory challenge to excuse the last African–American juror from the alternate jury panel, (2) the trial court's admission into evidence of irrelevant and prejudicial excerpts from letters authored by Bush and the prosecutor's use of those excerpts to comment improperly on Bush's failure to testify at trial, (3) the trial court's exclusion of Bush's trial counsel from an *in camera* proceeding in which the court decided that the identity of two confidential informants would not be disclosed and (4) the state appellate court's denial of access by Bush's appellate counsel to the sealed record of the *in camera* proceeding.

Under Section 2254(d) a writ of habeas corpus on behalf of a petitioner in custody pursuant to a State court judgment is to be granted only if that judgment resulted in a decision that either (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." But that "highly deferential" standard of review, *see Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam), applies only "with respect to any claim that was adjudicated *on the merits* in State court proceedings," Section 2254(d) (emphasis added).

Here the state court system did not adjudicate the merits of Bush's claim invoking *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); instead the California Supreme Court, the only state court to which that claim was presented, rejected that claim on state procedural grounds. We therefore review the *Batson* claim not under Section 2254(d), but under our pre-AEDPA law. Under pre-AEDPA law, the trial court's failure to find a prima facie case of discrimination under *Batson*'s first step would be entitled to a "presumption of correctness." *See Tolbert v. Page*, 182 F.3d 677, 683, 685 (9th Cir.1999) (en banc). The trial court, however, denied Bush's *Batson* claim solely with reference to *People v. Wheeler*, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978). The Supreme Court has held that the "strong likelihood" standard articulated in *Wheeler* impermissibly places on the defendant a more onerous burden of proof than is permitted by *Batson*'s standard of "raising an inference" of discriminatory purpose. *See Johnson v. California*, 545 U.S. 162, 168, 170–73, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005); *Wade v. Terhune*, 202 F.3d 1190, 1195 (9th Cir. 2000). "[W]here the state court uses the wrong legal standard, this [*Tolbert*] rule of deference does not apply." *Wade*, 202 F.3d at 1195. We therefore review Bush's *Batson* claim de novo.

Under *Batson*, a prosecutor is required to provide a race-neutral explanation once the defendant has shown that the "totality of relevant facts" surrounding the peremptory challenge at issue "gives rise to an inference of discriminatory purpose." 476 U.S. at 93–94. As Bush himself notes, the mere fact that a prosecutor uses a peremptory challenge to strike a sole prospective African–American juror is not enough on its own to raise such an inference. *See United States v. Vasquez–Lopez*, 22 F.3d 900, 902 (9th Cir.1994). Bush points to several "relevant facts" in support of his prima facie case, however, including that

cation and is not precedent except as provided by 9th Cir. R. 36–3.

racial motivation was part of the prosecution's theory of the case, that the defendant was African–American and the victim was white and that the remaining jurors were all white. He also argues that a comparison between the struck juror and jurors who were not struck supports his prima facie case of discrimination.

Comparative juror analysis is relevant to whether Bush has established a prima facie case of discrimination. *See Boyd v. Newland,* 467 F.3d 1139, 1144–45 (9th Cir. 2006). The voir dire transcripts show that differences between the struck juror and other jurors were not significant and that the prosecutor may have engaged in disparate questioning by inquiring into the African–American juror's knowledge of gangs, but not other jurors' knowledge of gangs. We therefore hold that Bush has presented a prima facie case of discrimination under *Batson*'s step one. Because the "state has never been required to present evidence of the prosecutor's actual, non-discriminatory reasons for striking [the juror]," we remand so that the district court may hold a hearing to give the prosecutor a chance to offer a race-neutral explanation and so that the district court may determine whether the prosecutor violated *Batson*. *See Paulino v. Castro,* 371 F.3d 1083, 1092 (9th Cir.2004).

Bush's remaining claims require no extended treatment, for each fails to meet the rigorous requirements of either of the AEDPA standards under Section 2254(d). In sum, the trial counsel's exclusion from the *in camera* proceeding, the admission of the letter excerpts, the prosecutor's comments at closing and the appellate counsel's inability to access the record of that proceeding—both singly and in combination—were neither contrary to, nor involved an unreasonable application of, clearly established law, nor did they involve an unreasonable determination of the facts.

Each party shall bear its own costs on appeal.

**REVERSED IN PART; AFFIRMED IN PART.**

KLEINFELD, Circuit Judge, dissenting:

In my view, we should not be exercising jurisdiction in this case. We submitted this case on October 20, 2005, and we issued a memorandum disposition that was filed December 13, 2005 and published at 162 Fed.Appx. 689 (9th Cir.2005). The mandate issued on January 4, 2006.

Issuance of the mandate means the case was all over and final. The reason we are now issuing this disposition in a case that came before the district court in 2001, and before our court in 2005, is that Bush moved to recall the mandate because his attorney failed to file a petition of certiorari to the Supreme Court. We granted this request, though I dissented. In a death penalty case where we recalled the mandate, the Supreme Court reversed us because recalling the mandate was "a grave abuse of discretion." *Calderon v. Thompson,* 523 U.S. 538, 542, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998). In *Calderon v. Thompson,* the Court held that we can recall the mandate "only in extraordinary circumstances," and that our power to recall a mandate is "to be held in reserve against grave, unforseen contingencies." *Id.* at 550, 118 S.Ct. 1489. I cannot see that any contingency here is "unforseen," nor that the circumstances are "extraordinary."

The importance of finality is especially clear here. We are telling the district court to hold a hearing in order to form a judgment about the hidden motivations of a prosecutor during jury selection in a case

tried thirteen years ago. For the lawyers and judges involved, a peremptory strike during voir dire is a routine event. I doubt that any lawyer can really remember very well what his inner, unspoken thoughts were 10 or 15 years ago during one of many voir dires, nor do I think anyone else can judge very well what someone's motives were so long ago. Maybe the lawyer who prosecuted this case in 1995 is still alive and still has his notes from that time and the notes will refresh his recollection and maybe not.

Because I do not think we may properly recall the mandate in this case, I respectfully dissent.