NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAY 31 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RICO LYNTICE RILEY, | No. 21-16056 |
| Petitioner-Appellant, | D.C. No. 2:18-cv-03050-JKS |
| v. | |
| JARED D. LAZANO, | MEMORANDUM* |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Eastern District of California
James K. Singleton, District Judge, Presiding

Argued and Submitted December 4, 2023
San Francisco, California

Before: COLLINS, FORREST, and SUNG, Circuit Judges.
Partial Concurrence by Judge SUNG.

Rico Riley, a state prisoner, appeals the district court's denial of his 28 U.S.C.

§ 2254 habeas petition. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and

we affirm.

We review de novo a district court's denial of habeas relief. *Balbuena v.*

*Sullivan*, 980 F.3d 619, 628 (9th Cir. 2020). Under the Antiterrorism and Effective

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Death Penalty Act of 1996 (AEDPA), a federal appellate court may only grant a petitioner habeas relief if the state court's adjudication of a claim (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." 28 U.S.C. § 2254(d)(1)–(2). "In conducting our review, we look to the last reasoned state-court decision." *Martinez v. Cate*, 903 F.3d 982, 991 (9th Cir. 2018) (quoting *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003)). In this case, the last reasoned state-court decision is the California Court of Appeal's order on direct review.

1.      **Batson *Claim.*** Riley makes two arguments. First, he argues that the state appellate court applied the wrong legal standard in considering his claim under *Batson v. Kentucky*, 476 U.S. 79 (1986), by applying a presumption in favor of the prosecution, misanalyzing prospective juror Danica D.'s voir dire responses, and failing to perform a comparative-juror analysis.

The state appellate court did not apply a presumption in favor of the prosecution based on the fact that Riley, the victim, and some of the witnesses are Black. Step One of a *Batson* analysis "require[s] courts to consider the 'totality of the relevant facts' and 'all relevant circumstances' surrounding the peremptory strike." *Boyd v. Newland*, 467 F.3d 1139, 1146 (9th Cir. 2006) (quoting *Batson*, 476

2

U.S. at 94, 96). The state appellate court's consideration of the participants' race was part of its assessment of the circumstances surrounding the prosecution's peremptory strike of Danica D.

Additionally, the state appellate court did not erroneously conduct a Step-Three analysis at Step One when it analyzed Danica D.'s voir dire responses. A state court unreasonably applies clearly established federal law at Step One when it "scan[s] the record, articulate[s] its own race-neutral reasons why the prosecutor may have exercised his peremptory strikes, and denie[s] [the defendant's] *Batson* claim on those grounds." *Hoyos v. Davis*, 51 F.4th 297, 307 (9th Cir. 2022). In his state appeal, Riley relied on Danica D. being "an ideal juror from a prosecutor's point of view" in arguing that the circumstances raised an inference of discrimination. As such, the state appellate court considered Danica D.'s answers in analyzing Riley's reasoning and evidence, rather than as part of the forbidden approach of identifying its own race-neutral grounds to justify the prosecutor's peremptory strike.

The state appellate court also reasonably rejected Riley's argument that it was required to engage in a comparative-juror analysis for the first time on appeal in assessing whether Riley established a prima facie case at Step One. We held in *Hoyos* that we were aware of "no Supreme Court authority *requiring* a state court to conduct a comparative juror analysis at Step One" of the *Batson* analysis and that

3

the California Supreme Court in that case therefore "did not violate clearly established federal law by failing to conduct a comparative juror analysis at Step One." *Id.* at 308 (emphasis added). And in *Boyd*, we likewise explicitly declined to "hold that comparative juror analysis *always* is compelled at the appellate level," 467 F.3d at 1148, and we instead held only that "comparative juror analysis is an important tool that courts *should* utilize on appeal when assessing a defendant's *plausible Batson* claim," *id.* at 1150 (emphasis added); *see also Crittenden v. Ayers*, 624 F.3d 943, 956 (9th Cir. 2010) ("[C]omparative juror analysis *may* be employed at step one to determine whether the petitioner has established a prima facie case of discrimination." (emphasis added)). Accordingly, the state court did not act contrary to clearly established federal law by rejecting a *per se* rule that a comparative-juror analysis must be conducted on appeal, regardless of the circumstances.

Second, Riley argues that the state appellate court's factual determinations relative to his *Batson* challenge were unreasonable. Again, we disagree. On the record of this case, the state appellate court did not unreasonably determine any facts and reasonably concluded that the proffered inference of racial discrimination at Step One was not plausible.

**2.** ***Due-Process Claim.*** Riley next contends that his due-process rights were violated because the state trial court failed to preserve the potential jurors' questionnaires, which prevented the state appellate court from completing a

comparative-juror analysis. This argument fails because a comparative-juror analysis was not required. The state trial court provided Riley with the complete voir dire transcript to facilitate appellate review. Riley does not point to—and we could not identify—any Supreme Court case requiring more. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000).

**AFFIRMED.**

*Riley v. Lazano*, No. 21-16056

SUNG, Circuit Judge, concurring in part and concurring in the judgment:

At Step One of the *Batson* analysis, the defendant bears the burden of making a prima facie case of discriminatory jury selection. *Batson v. Kentucky*, 476 U.S. 79, 96 (1986). To meet this burden, the defendant is entitled to rely on "a wide variety of evidence." *Johnson v. California*, 545 U.S. 162, 163 (2005). In *Batson*, the Court declined to *require* the defendant to provide "pattern or practice" evidence and instead "spoke of the methods by which prima facie cases could be proved in permissive terms." *Id.* at 169 n. 5. Further, the Court "held that a defendant could make out a prima facie case of discriminatory jury selection by 'the totality of the relevant facts' about a prosecutor's conduct during the defendant's own trial." *Miller-El v. Dretke*, 545 U.S. 231, 239 (2005) ("*Miller–El II*") (quoting *Batson*, 476 U.S. at 94, 96). There can be no dispute that the prosecutor's treatment of other potential jurors is part of the "totality of the relevant facts" and that a comparative juror analysis is a permissible method of showing discriminatory jury selection. *See Flowers v. Mississippi*, 588 U.S. 284, 301–302 (2019) (explaining that, under the Court's precedents, a comparison of struck prospective jurors of one race and non-struck jurors of another race is one type of evidence a defendant can produce to support a prima facie showing).

In this case, because the California Court of Appeals concluded that the trial

court applied the wrong prima facie standard, it engaged in de novo review of Riley's *Batson* claim. However, even though Riley argued that the state appellate court should consider his comparative juror analysis when determining whether he met his prima facie burden at *Batson* Step One, the state court refused to do so. Because the state court refused to consider relevant evidence at Step One, its decision was "contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The majority asserts that "[w]e held in *Hoyos* that we were aware of 'no Supreme Court authority *requiring* a state court to conduct a comparative juror analysis at Step One.'" Mem. at 3 (quoting *Hoyos v. Davis*, 51 F.4th 297, 308 (9th Cir 2022), and adding emphasis). The majority appears to read the quoted statement from *Hoyos* as holding that, under Supreme Court authority, state courts are *never* required to conduct a comparative juror analysis at Step One, and consequently, the majority flatly rejects Riley's contention that a comparative juror analysis was required under the circumstances of this case. But the majority's reading of the quoted statement from *Hoyos* is out of context and overbroad. The majority ignores that we made the quoted statement only after we explained that Hoyos "did not argue for comparative juror analysis in the trial court or on direct appeal." 51 F.4th at 308. I, too, am unaware of any Supreme Court authority

2

requiring a state court to conduct a comparative juror analysis at Step One *sua sponte*.[1] But in this case, Riley argued on direct appeal that the state appellate court should consider his comparative juror analysis at Step One, when the court was considering his *Batson* claim de novo. Thus, the question here is whether Riley was entitled to rely on comparative juror evidence to make his prima facie case, such that the state court was required to consider it. The answer under *Batson*, *Johnson*, and *Miller-El II* is clearly yes.

The majority also notes that in *Boyd v. Newland*, 467 F.3d 1139 (9th Cir. 2006), we declined to hold that comparative juror analysis is *always* compelled at the appellate level. *See id.* at 1148, 1150. That is beside the point. "Not always" does not mean "never." The question here isn't whether a state appellate court must *always* conduct a comparative juror analysis.[2] Rather, the question is whether a state court must consider a comparative juror analysis when the defendant seeks

---

[1] Additionally, when we reviewed Hoyos's *Batson* claim de novo, we engaged in a comparative juror analysis to determine whether he made a prima facie case of juror discrimination at Step One. *Hoyos*, 51 F.4th at 311–15.

[2] The majority also concludes that "the state court did not act contrary to clearly established federal law by rejecting a *per se* rule that a comparative-juror analysis must be conducted on appeal, regardless of the circumstances." But Riley did not argue for any such *per se* rule. Rather, Riley argued that the state appellate court, when reviewing his claim de novo, was required to consider his comparative analysis under the circumstances of his case, "where only a few potential African-American jurors were on the panel," and he raised a plausible *Batson* claim, citing *United States v. Collins*, 551 F.3d 914 (9th Cir. 2009), *Boyd*, and *Batson*, *Johnson*, and *Miller-El II*.

to rely on such evidence to meet his prima facie burden at Step One. Our decision in *Boyd* makes clear that under these circumstances, Supreme Court precedent does require the state court to consider the comparative juror evidence. *See id.* at 1149–51. Indeed, after noting that some California courts had questioned whether it was appropriate for an appellate court to conduct a comparative juror analysis at *Batson* Step One for the first time on appeal, we specifically held "that Supreme Court precedent requires a comparative juror analysis even when the trial court has concluded that the defendant failed to make a prima facie case." *Id.* at 1149.[3]

Nonetheless, I concur in the judgment affirming the district court's denial of habeas relief based on Riley's *Batson* claim because his comparative juror analysis does not support the inference that the prosecutor struck Danica D. based on her

---

[3] To the extent the majority suggests that no comparative juror analysis was required in this case because Riley failed to raise a plausible *Batson* claim, I disagree. The Supreme Court has explained that the defendant's prima facie burden at *Batson* Step One is not meant to be onerous. *Johnson*, 545 U.S. at 170. The defendant's burden to raise a "plausible" claim is necessarily lighter than his prima facie burden. *See Boyd*, 467 F.3d at 1147. Additionally, the Court explained in *Batson* that when a defendant shows "that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race," he is also "entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" *Johnson*, 545 U.S. at 169 (quoting *Batson*, 476 U.S. at 96). Here, Riley is African-American, and the prosecution used peremptory challenges to strike two African-American jurors when only one other potential African-American juror remained in the pool. Based on these facts, Riley's *Batson* claim was plausible, and he was entitled to rely on "these facts and any other relevant circumstances" to establish his prima facie case. *Batson*, 476 U.S. at 96.

race. Several seated jurors had relatives or friends who were convicted of crimes—but only Danica D.'s relative was involved in a crime involving destruction of property.[4] The prosecution asked both Danica D. and a nonblack seated juror nearly identical questions concerning the details of their relatives' crime and whether they believed their relatives were treated fairly following their arrest.[5] Additionally, like Danica D., several seated jurors indicated that they had relatives or friends who were victims of domestic violence or sexual assault. Riley, however, points to no seated juror who expressed a negative view of their victimized loved one—as Danica D. did. *Cf. Hoyos*, 51 F.4th at 313 (noting that the defendant failed to "identify another non-struck, non-Hispanic juror who expressed [similar] qualifications about imposing a sentence of death compared to a sentence of life in prison").

I also concur in Section 2 of the memorandum disposition affirming the denial of habeas relief based on Riley's due process claim.

---

[4] The parties agreed to excuse the only other prospective juror who indicated that his relative had been arrested for vandalism.

[5] The prosecution likewise asked contextual and fairness questions to several nonblack prospective jurors whose family members had been accused of crimes.

5