Jerome D. BROWN, Petitioner—
Appellant,

v.

Frankie Sue Del PAPA; Sherman
Hatcher, Respondents—
Appellees.

No. 06–15215.

D.C. No. CV–01–00202–KJD.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 18, 2006.

Decided Nov. 13, 2006.

Jason F. Carr, Esq., Franny A. Forsman, Esq., FPDNV—Federal Public Defender's Office, Las Vegas, NV, for Petitioner–Appellant.

Frankie Sue Del Papa, AGNV—Office of the Nevada Attorney General, Carson City, NV, pro se.

Victor Hugo Schulze, II, Esq., AGNV—Office of the Nevada Attorney General, Las Vegas, NV, for Respondent–Appellees.

Before: REINHARDT, RYMER, and THOMAS, Circuit Judges.

## MEMORANDUM *

Jerome Brown appeals the district court's denial of the habeas petition he filed under 28 U.S.C. § 2254. Brown argues that the state court's rejection of his challenge under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in which he contended that the prosecutor impermissibly used peremptory challenges to strike two African American jurors on the basis of race, constituted an unreasonable application of *Batson* and re-

sulted from an unreasonable determination of the facts. We review de novo the district court's denial of a § 2254 habeas petition, *Bailey v. Rae,* 339 F.3d 1107, 1111 (9th Cir.2003), and we reverse.

Under § 2254, we may grant relief only if the state court's adjudication of a claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or ... resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003); *see also id.* ("The state court's application of clearly established law must be objectively unreasonable."). Under the "unreasonable determination of the facts" clause, we may grant relief if "any appellate court to whom [sic] the defect is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." *Taylor v. Maddox,* 366 F.3d 992, 1000 (9th Cir.2004). In challenges governed by this latter clause, AEDPA's presumption of correctness afforded to state court factual findings and the clear-and-convincing standard of proof required to rebut that presumption, § 2254(e)(1), do not apply. *Taylor,* 366 F.3d at 1000.

The clearly established Supreme Court law laid out in *Batson* involves a three-part inquiry: "First, the defendant must make

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

a prima facie showing that a challenge was based on race. Second, the prosecution must offer a race-neutral basis for the challenge. Third, the court must determine whether the defendant has shown 'purposeful discrimination.' " *Kesser v. Cambra*, 465 F.3d 351, 359 (9th Cir.2006) (en banc) (quoting *Batson*, 476 U.S. at 98, 106 S.Ct. 1712).

■ We agree with Brown that the state court's rejection of his *Batson* claim resulted from an unreasonable determination of the facts and that he is entitled to habeas relief under § 2254(d)(2). In *Kesser v. Cambra*, a recent case granting relief on a *Batson* challenge under § 2254(d)(2), we held that "comparative [juror] analysis is required even when it was not requested or attempted in state court." *Id.* at 361. In that case, we ruled that "by failing to consider comparative evidence in the record before it that undeniably contradicted the prosecutor's purported motivations," the state court had "unreasonably accepted his nonracial motives as genuine." *Id.* at 358.[1]

As in *Kesser*, the state court's determination of the facts in this case was unreasonable because it failed to consider crucial evidence in the voir dire transcript that undermined the prosecution's proffered justifications for exercising its peremptory strikes. Because the state court's determination of facts was unreasonable, we must set aside its erroneous findings and determine whether, on a proper review of the record, Brown has established a *Batson* violation. *See id.* at 360–371 (reviewing the voir dire transcript and concluding that it "refutes each of the prosecutor's nonracial grounds, compelling the conclusion that his actual and only reason for striking [a nonwhite juror] was her race"); *see also Taylor*, 366 F.3d at 1008 ("When we determine that state-court fact-finding is unreasonable, ... we have an obligation to set those findings aside and, if necessary, make new findings."). A careful review of the record before the state court reveals the prosecutor's justifications to be pretextual.[2]

1. The dissent argues that we should not "fault a state trial court" for failing to consider evidence in the voir dire transcript, especially when such a transcript may not have been available to the trial court. Dis. op. at 2. We agree that a state trial court, such as the one in this case, cannot review a transcript that does not yet exist. This fact does not, however, relieve a state *appellate* court of its duty to conduct a comparative analysis of the voir dire transcript. *See id.* at 361 ("The 'factual basis' for a comparative juror analysis is contained in the voir dire, which was submitted to the [state appellate court] and was part of the 'evidence presented in the State court proceeding.' 28 U.S.C. § 2254(d)(2)."). In *Boyd v. Newland*, 467 F.3d 1139 (9th Cir. 2006), a panel of this court originally held that *Batson* does not compel a court to conduct comparative juror analysis for the first time on appeal. *See id.*, at 1147–48. It then amended its opinion in light of recent Supreme Court decisions, explaining that it "recognize[d] that our previous reading of *Batson* was too narrow and that *Batson* does

contemplate a comparative juror analysis on appeal." *Id.* It added that "comparative juror analysis is an important tool that courts *should* use on appeal." *Id.* at 1149. *Boyd* also states that "[a] reviewing court cannot examine the 'totality of the relevant facts' and 'all relevant circumstances' surrounding a prosecutor's peremptory strike of a minority potential juror without an entire voir dire transcript." *Id.* at 1151 (quoting *Batson*, 476 U.S. at 94, 96, 106 S.Ct. 1712) (citation omitted). Of course, the voir dire transcript serves a purpose in such cases only if the reviewing court reviews it.

2. The dissent accuses us of "simply substitut[ing] our judgment for the state supreme court's, as if we, too, were sitting in direct review." Dis. op. at 2. It sounds as if we are doing something wrong when put that way, but the type of review in which we engage is the type we always afford in AEDPA cases when we find an "unreasonable determination of the facts" or an "unreasonable application" of Supreme Court law—we decide

■ The prosecutor asserted that he struck Juror Martin because he was concerned that she did not seem to understand or respond appropriately to certain voir dire questions. This assertion is unsupported by the record. Although the prosecutor stated that Martin misunderstood questions "[t]wo or three times," the only example he cited was that, when asked whether she worked for the federal government, Martin answered, "United States." As the magistrate judge found, this was the only response that was "even questionably" inappropriate. Moreover, we conclude that Martin's answer to the employment question cannot reasonably be viewed as inappropriate; as Brown points out, Martin, who was an employee of the United States Postal Service, was not actually an employee of the "federal government." We note further that Martin had previously served on a grand jury for over a year and on a petit jury that reached a verdict; clearly she was able to comprehend legal proceedings. She had also attended at least two years of college. The prosecutor's justification is simply implausible.[3]

The prosecutor declined to strike white jurors whose answers were far more inappropriate or unresponsive than Martin's. For example, when asked what her four children did for a living, Juror Sassone replied, "Three in California, one in Missouri." When asked whether she was "[a]cquainted with anyone in law enforcement," Juror Southard responded, "Acquainted? What do you mean by 'acquainted.'" "A prosecutor's motives may be revealed as pretextual where a given explanation is equally applicable to a juror of a different race who was not stricken by the exercise of a peremptory challenge." *McClain v. Prunty*, 217 F.3d 1209, 1220–21 (9th Cir.2000). What is more, the prosecutor failed to make any effort to clear up the reasons for Juror Martin's allegedly

whether, had the state court not unreasonably determined the facts or applied the law, it would have found a constitutional violation. *See, e.g., Kesser*, 465 F.3d at 360–71 (so finding); *see also Boyd*, 467 F.3d at 1149 ("Without engaging in comparative juror analysis, we are unable to review meaningfully whether the trial court's ruling at either step one or step three of *Batson* was unreasonable in light of Supreme Court precedent.").

3. The State points to another portion of Martin's voir dire testimony that it asserts demonstrates her "confusion and inconsistency." Martin indicated that she had been the victim of a crime in Nevada and that the authorities had caught the perpetrator. When asked, "Was that resolved satisfactorily for you?", she replied "Somewhat" and then, "I think it could have been better." The court next asked her, "Did you blame the State of Nevada because of that, the DA?"; Martin replied, "No." The State argues that "[t]hese statements are fundamentally inconsistent, and would be of great concern to any prosecutor, as they demonstrate the probability of residual resentment, hard feelings, and bias toward the police and prosecutorial agencies. This jumbled line of thought was exactly as the prosecutor believed—inconsistent and confused."

We cannot accept the State's argument. First, the post hoc assertion that Martin was biased against the State was never mentioned at voir dire and therefore cannot help to justify the prosecutor's strike. *See Miller–El v. Dretke*, 545 U.S. 231, 251–52, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005). In any case, the assertion is wholly unsupported by the record; Martin specifically said that she did *not* blame the State or the DA for the way her case was handled. Second, the argument that Martin's responses were "confused" and "inconsistent" is meritless. There is no confusion or inconsistency in Martin's replies that she thought that the resolution of her case could have been more satisfactory but did not blame the State or the DA. There are numerous consistent explanations for Martin's statements—perhaps, for example, Martin blamed the judge or jury for what she perceived to be a less than fully satisfactory resolution, or perhaps she simply blamed chance or fate, or even "the system."

inappropriate responses. "[U]nless he had an ulterior reason for keeping [Martin] off the jury we think he would have proceeded differently.... [W]e expect the prosecutor would have cleared up any misunderstanding by asking ... questions before getting to the point of exercising a strike." *Miller–El*, 545 U.S. at 244, 125 S.Ct. 2317.

■ The prosecutor struck Juror Thrower supposedly because he was concerned that jury service would burden Thrower's job search and because of a discrepancy between Thrower's juror form and his oral testimony regarding his marital status. As with Juror Martin, the record does not support the prosecutor's justifications. The trial judge predicted that the trial would last only one-and-a-half days, and Juror Thrower answered that he was "all right" with serving on the jury. By contrast, white jurors who stated that jury service would be a serious burden were not dismissed, including one white juror who noted a "fair possibility" that his wife would go into premature labor during the trial. A review of the record before the state court also reveals a number of seated jurors whose oral testimony at voir dire was at least as inconsistent, if not more so, with their juror forms in some respect. For example, Juror Freeman's information sheet stated that he had never served on a jury, but he told the court at voir dire that he had. Juror Tucker's sheet listed his wife's occupation as "Homemaker," but in his oral testimony he stated that she "[w]orks for a carpet manufacturer." Moreover, the prosecutor "did not explain how [the discrepancy] might interfere with [Thrower's] performance as a juror in this particular case," nor did he attempt to clear up the reasons for the discrepancy before exercising a peremptory strike. *Kesser*, 465 F.3d at 364.

As in *Kesser*, "[a]lthough we must give deference to the [state court's] findings of fact," both the state trial court and the state supreme court in this case "ruled on the credibility of the prosecutor's reasons without citing to any material from the voluminous voir dire." *Id.* at 371. This defective factfinding process led to factual determinations that were "wrong, and unreasonably so." *Id.* at 368. Having so concluded, our own review of the record convinces us that Brown has satisfied his burden of proof under *Batson*. Accordingly, we reverse the district court and grant relief under § 2254(d)(2).

■ We also agree with Brown that the Nevada courts applied *Batson* in an objectively unreasonable fashion by failing to engage in "a sensitive inquiry into such circumstantial and direct evidence of [discriminatory] intent as may be available," which *Batson*'s third step clearly requires. *Batson*, 476 U.S. at 93, 106 S.Ct. 1712 (quoting *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)) (internal quotation marks omitted). The third step of *Batson* imposes an "affirmative duty" on courts to evaluate the entire record to determine whether the prosecutor's proffered reasons are pretextual. *Lewis v. Lewis*, 321 F.3d 824, 835 (9th Cir.2003). "Under *Batson*'s third step, state courts must review the record to root out" any "pretextual, make-weight justifications for ... race-based strikes." *Kesser*, 465 F.3d at 371. We have explained that, "[a]t a minimum, this procedure must include a clear record that the trial court made a deliberate decision on the ultimate question of purposeful discrimination." *United States v. Alanis*, 335 F.3d 965, 968 n. 2 (9th Cir.2003). Although the dissent is correct that the ultimate burden of persuasion never shifts from Brown, "the third step of *Batson* primarily involves the trier of fact." *Kesser*, 465 F.3d at 359. Neither the state trial court nor the state supreme

court made any serious effort to conduct the requisite sensitive inquiry in this case.[4]

Here, the state court concluded without any analysis that Brown "simply allege[d]" that the prosecutor's reasons were pretextual, "but has not demonstrated how." Not only did the state court produce no "clear record," but it produced no record at all to demonstrate that it had made a "deliberate decision" as to discrimination. It is not enough that the state court considered the prosecutor's justifications to be plausible. *Id.* at 969. A desire to have trials proceed quickly cannot relieve trial courts of their clearly established *Batson* duties under the law of the Supreme Court and our circuit, and certainly state appellate courts have no excuse for failing to examine and discuss voir dire transcripts and to establish a record demonstrating that they have carried out their "affirmative duty" at step three—a duty to root out any pretextual justifications for the allegedly discriminatory action.

The state court's failure to conduct the third step of the prescribed analysis constituted an unreasonable application of *Batson. See Lewis*, 321 F.3d at 835. Had the state court applied *Batson* in a reasonable manner, it would have discovered that the prosecutor's proffered justifications were unsupported, or even contradicted, by the record. Brown is therefore entitled to relief under § 2254(d)(1) of AEDPA, as well as under (d)(2).

Because Brown's *Batson* claim is sufficient to support the issuance of the writ,

we do not reach his claim of ineffective assistance of counsel.

**REVERSED.**

RYMER, Circuit Judge, dissenting.

I part company for three reasons. First, I do not believe the Nevada Supreme Court's determination is contrary to, or an unreasonable application of, *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The prosecutor articulated race neutral reasons for his challenges of two African American prospective jurors. The information on Thrower's jury form was different from his statement on voir dire; he was also unemployed, and the prosecutor figured he would rather be out looking for a job than serving on the jury. The prosecutor said he had several reasons for excusing Martin, who was employed by the postal service, but could only remember that she didn't seem to understand a question about working for the federal government given her reply that she worked for the "United States." While in hindsight this may seem picky or, as the majority puts it, inappropriate, the trial judge was in the best position to assess the prosecutor's credibility in the context of the overall proceeding as well as the manner in which Martin in fact responded, and had no difficulty with the prosecutor's explanation. Brown's only offering was that Martin was a grand juror for a year and she "certainly" understood the questions and answers there, but neither the prosecutor nor the court was obliged to accept that "certainty." The trial judge "did not find any racially motivated reasons the State exercised in their

---

4. The dissent's quotation of Brown's trial counsel, who stated at voir dire, "I'm not sure we're really arguing anything here," is highly misleading. The dissent quotes Brown's counsel to suggest that even he believed that any problem in the jury selection process was not particularly serious. *See* dis. op. at 4. The two pages of the voir dire transcript that follow the dissent's quotation, however, show that Brown's counsel thought the problem very serious. Indeed, counsel "challenge[d] this panel as a whole" and "move[d] to dismiss this panel and start fresh."

peremptory challenges." Likewise, the Nevada Supreme Court found no discriminatory intent, and no showing that the explanations were pretextual. The United States Supreme Court has made clear that "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); *Rice v. Collins,* 546 U.S. 333, 126 S.Ct. 969, 974, 163 L.Ed.2d 824 (2006). Thus, the Nevada Supreme Court's determination was not contrary to federal law.

Second, I do not believe it is for us, on habeas review under AEDPA, to fault a state trial court for failing to "consider crucial evidence in the voir dire transcript that undermined the prosecution's proffered justifications for exercising its preemptory strikes." There is no law clearly established by the Supreme Court that imposes some kind of sua sponte obligation on a state trial judge to recollect everything in a "transcript"—or, in the more likely event that no transcript was available, to remember every word that had gone before in the voir dire process— and to sift it for "crucial evidence" that might undermine the prosecutor's explanation, all without any help from the defendant. Nor is it for us to conclude that "[a] careful review of the record before the state court reveals the prosecutor's justifications to be pretextual." This simply

substitutes our judgment for the state supreme court's, as if we, too, were sitting in direct review. Thus, the disposition states that "[o]ur own review of the record convinces us that Brown has satisfied his burden of proof under *Batson*." However, this is not the question that AEDPA charges us to answer.

Nor does *Kesser v. Cambra,* 465 F.3d 351, 370 (9th Cir.2006), make it the right question.[1] Even though *Kesser* conducts a comparative juror analysis for the first time on habeas review, the ultimate question remains whether the state court's determination that the prosecutor was credible, and his explanation not pretextual, is an unreasonable application of law to the facts. Here, it was not because the findings have support in the record. For example, the prosecutor struck McGuire because he, like Thrower, stated on his jury form that he was single when in fact he had been married for years. While he did not strike Sassone or Southard, who Brown now argues had comprehension problems akin to Martin's, it is apparent from a complete reading of the voir dire that Sassone did not appear to *misunderstand* but rather to *mishear* the question,[2] and Southard just needed clarification of what "acquainted" meant in the context of the judge's question about whether she was acquainted with anyone in law enforcement.[3]

---

1. If *Kesser* can be read as holding this, then it is even more out of line with clearly established Supreme Court law than I thought. *See* 465 F.3d at 386 (noting that to conduct a comparative juror analysis without one having been requested or conducted at trial, and without any factual basis to support one, is a far cry from *Miller–El v. Cockrell,* 537 U.S. 322, 331–34, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003), where the Supreme Court endorsed comparative analysis based on testimony, arguments, and findings) (Rymer, J., dissenting).

2. When Sassone said she had four children, the court asked "Do for living." Sassone answered: "Three in California; one in Missouri." When the court then asked "What do they do for a living?" she responded appropriately. It is obvious in context that she misheard the truncated phrase *"do for living"* as *"living."*

3. When the trial judge asked Southard if she were "[a]cquainted with anyone in law enforcement," she responded: "Acquainted? What do you mean by 'acquainted'"? This can reasonably be interpreted as questioning

Finally, I do not join in condemning the state trial court and the state supreme court for failing to make "any serious effort to conduct the requisite sensitive inquiry" at step three of the *Batson* analysis. The sensitivity and seriousness of the inquiry need only be as sensitive and serious as the problem. Here, the state trial judge raised the issue of possible discrimination. The trial court heard from the prosecutor and determined that the dismissals of Martin and Thrower was not racially motivated. Even Brown's trial counsel stated, "[w]ell, Judge, just to complete the record again. I'm not sure we're really arguing anything here...." The discussion in the Nevada Supreme Court's order dismissing Brown's direct appeal demonstrates that the court reviewed the record and found that Brown had not carried his burden to prove discrimination. As there really was nothing to argue about in this case, the inquiry was sensitive, and serious, enough. In sum, the state courts did not abrogate their affirmative duty to determine whether discrimination occurred. *See Rice*, 126 S.Ct. at 973–74.

As there is no merit to Brown's ineffective assistance of counsel claim, I would affirm.

the extent of the relationship the judge had in mind. The court elaborated that it could be socializing with people in law enforcement, or having a neighbor or relative. She then indicated "Volunteers during a election time I met, and that's about it."