**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ROBERT MCDANIELS,
*Petitioner-Appellant*,

v.

RICHARD J. KIRKLAND, Warden,
*Respondent-Appellee*.

No. 09-17339

D.C. No.
4:05-cv-00904-
PJH

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, Chief District Judge, Presiding

KEELON T. JENKINS,
*Petitioner-Appellant*,

v.

MICHAEL S. EVANS, Warden,
*Respondent-Appellee*.

No. 11-15030

D.C. No.
3:05-cv-02003-
MHP

OPINION

Appeal from the United States District Court
for the Northern District of California
Marilyn H. Patel, Senior District Judge, Presiding

Argued and Submitted En Banc
June 16, 2015—San Francisco, California

Filed December 24, 2015

Before: Sidney R. Thomas, Chief Judge and Harry Pregerson, M. Margaret McKeown, William A. Fletcher, Marsha S. Berzon, Richard C. Tallman, Consuelo M. Callahan, Sandra S. Ikuta, Morgan Christen, Andrew D. Hurwitz and Michelle T. Friedland, Circuit Judges.

Opinion by Judge Friedland;
Concurrence by Judge Ikuta

## SUMMARY[*]

### Habeas Corpus

Clarifying the scope of the record that federal courts may consider in habeas cases in which certain evidence was presented to the state trial court but not to any state appellate court, the en banc court held that, in such cases, federal courts may consider the entire state-court record, including evidence that was presented only to the trial court.

Robert McDaniels and Keelon Jenkins, who were convicted of murder in California Superior Court, and whose convictions were affirmed by the California Court of Appeal in 2003, filed federal habeas corpus petitions arguing that the prosecution made racially motivated peremptory strikes, in violation of *Batson v. Kentucky*, during pre-trial jury selection.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The en banc court held that the California Court of Appeal's decision was not contrary to or an unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d)(1). In so holding, the en banc court explained that, in 2003, Supreme Court precedent did not require courts to undertake a comprehensive comparative juror analysis, sua sponte, in adjudicating a *Batson* claim; and that because the trial court did not combine *Batson*'s second and third steps, the California Court of Appeal could not have contravened *Batson* by failing to correct a non-existent error.

The en banc court explained that a comparative analysis of the treatment of jurors may be central to a federal court's review of whether a state court's decision rested on an unreasonable determination of facts for purposes of 28 U.S.C. § 2254(d)(2), regardless of the fact that the state court was not required by clearly established law to perform such comparisons. The en banc court then reaffirmed the holding in *Jamerson v. Runnels*, 713 F.3d 1218 (9th Cir. 2013), that *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), allows federal courts sitting in habeas to consider information that was available to the state trial court, even if that information was not also presented to the state appellate court.

Having clarified the scope of the record that should be considered in determining the petitioners' *Batson* claims, the en banc court remanded the appeals to the three-judge panel to determine in the first instance whether the failure to conduct a comparative juror analysis resulted in an unreasonable determination of the facts within the meaning of § 2254(d)(2).

Concurring, Judge Ikuta, joined by Judges Tallman and Callahan, wrote that *Miller-El v. Dretke*, 545 U.S. 231

(2005), could not and did not establish a new procedural rule that a state court must use comparative juror analysis when adjudicating a *Batson* claim; and that a failure to do so therefore cannot result in a decision that is "contrary to, or involved an unreasonable application of, clearly established Federal law" under § 2254(d)(1).

## COUNSEL

Jovita P. Tamor and Richard A. Tamor, Tamor & Tamor, Oakland, Californa, for Petitioner-Appellant Robert McDaniels.

Albert Joel Kutchins (argued), Berkeley, California, for Petitioner-Appellant Keelon T. Jenkins.

Arthur P. Beever (argued), Deputy Attorney General; Peggy S. Ruffra, Supervising Deputy Attorney General; Gerald A. Engler, Senior Assistant Attorney General; Kamala D. Harris, Attorney General of California, Office of the Attorney General, San Francisco, California, for Respondent-Appellee Richard Kirkland, Warden.

Arthur P. Beever (argued), Deputy Attorney General; Pamela K. Critchfield, Deputy Attorney General; Gerald A. Engler, Senior Assistant Attorney General; Kamala D. Harris, Attorney General of California, Office of the Attorney General, San Francisco, California, for Respondent-Appellee Michael Evans, Warden.

Joy G. Kim and David J. Berger, Wilson Sonsini Goodrich & Rosati, Palo Alto, California; Allison Elgart and Eva

Paterson, Equal Justice Society, Oakland, California, for Amici Curiae Civil Rights Organizations.

---

**OPINION**

FRIEDLAND, Circuit Judge:

After a jury in California Superior Court convicted them each of murder, Robert McDaniels and Keelon Jenkins challenged their convictions in the California Court of Appeal. McDaniels and Jenkins argued that the prosecution had made racially motivated peremptory strikes during pre-trial jury selection. They did not, however, move to place the entire record of voir dire before the California Court of Appeal, nor did they ask that court to perform a comprehensive comparative juror analysis. The California Court of Appeal affirmed their convictions. McDaniels and Jenkins then filed federal petitions for writs of habeas corpus, which were denied by the district court.

We took their appeals en banc to clarify the scope of the record that federal courts may consider in habeas cases in which certain evidence was presented to the state trial court but not to any state appellate court. We conclude that, in such cases, federal courts may consider the entire state-court record, including evidence that was presented only to the trial court. We also consider and reject Petitioners' arguments that the California Court of Appeal's approach to evaluating Petitioners' challenges to the prosecution's peremptory strikes violated clearly established law. Having done so, we return the case to the original three-judge panel to evaluate whether, in light of the whole state-court record, the California Court of Appeal's rejection of Petitioners'

challenges to the strikes was based on an unreasonable determination of the facts.

## I.

McDaniels and Jenkins were tried together for murder in California Superior Court.  During voir dire, the prosecution used peremptory challenges to strike seven of ten African-American prospective jurors from the venire.  McDaniels and Jenkins objected, arguing that the prosecution's peremptory challenges were racially motivated in violation of *People v. Wheeler*, 583 P.2d 748 (Cal. 1978).  *Wheeler* is "the California procedural equivalent of" *Batson v. Kentucky*, 476 U.S. 79 (1986), which prohibits the use of racially motivated peremptory challenges as a matter of federal law. *Crittenden v. Ayers*, 624 F.3d 943, 951 n.2 (9th Cir. 2010). "[A] *Wheeler* motion serves as an implicit *Batson* objection." *Id.*

*Batson* requires trial courts to follow three steps in adjudicating claims of racial discrimination during voir dire:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015).

Proceeding in accordance with this framework, the state trial court first found that the defendants had made a prima facie showing that the prosecution had made peremptory challenges on the basis of race. The prosecutor then offered justifications for the four peremptory challenges, arguing that his reasons for striking the jurors were all race-neutral. After hearing the prosecutor's proffered justifications, the state trial court rejected the defendants' *Batson*/*Wheeler* challenges. The trial court found the prosecutor's reasons for the peremptory strikes to be race-neutral, and concluded that "[i]t didn't appear here to be any type of racism going on."

The trial proceeded, and the jury found McDaniels and Jenkins guilty of murder. McDaniels and Jenkins renewed their *Batson*/*Wheeler* claims on appeal to the California Court of Appeal, which affirmed their convictions. *See People v. Jenkins*, No. A095527, 2003 WL 22881662 (Cal. Ct. App. Nov. 25, 2003) (unpublished).

Responding to the defendants' argument that, generally, "only African-American potential jurors were asked whether they could convict even if they felt sympathetic toward the defendants," the California Court of Appeal observed that "Jenkins identifies no less than six other jurors who were queried on this point." *Id.* at *4. Additionally, the court stated that "[e]vidence supporting such 'comparative juror analysis' is properly considered on appeal only if it was presented to the trial court," and noted that "neither [Jenkins] nor McDaniels made this argument below." *Id.* The California Court of Appeal did not otherwise discuss comparative juror analysis, and it appears that neither McDaniels nor Jenkins requested that it do so.

The California Court of Appeal actually could not have conducted a comprehensive comparative juror analysis using the portions of the record in its direct possession because those portions did not include the entire record of voir dire. The trial judge had asked each prospective juror to complete a written questionnaire, but the portions of the record the parties presented to the California Court of Appeal did not include those questionnaires. The court also lacked a transcript of the first day of voir dire. There is no indication, however, that anything prevented McDaniels and Jenkins from adding this missing evidence to the record or that the California Court of Appeal was unable to exercise its discretion to do so sua sponte. *See* Cal. R. Ct. 12 (2002) (providing a procedure for "[a]ugmenting and correcting the record" on appeal "on motion of a party or [the reviewing court's] own motion").[1] On the contrary, McDaniels and Jenkins successfully augmented the record on appeal with other materials at least once.

McDaniels and Jenkins sought review in the California Supreme Court, which was denied. After unsuccessfully seeking state post-conviction review, they both then filed federal habeas petitions reasserting their *Batson* claims. The habeas petitions were assigned to different judges of the U.S. District Court for the Northern District of California. The evidence before the federal district court included the juror questionnaires for the seated and alternate jurors and the transcript from the first day of voir dire, which had not been

---

[1] Rule 12 of the California Rules of Court was renumbered as Rule 8.155 as of January 1, 2007.

presented to the California Court of Appeal.**²** The district court denied habeas relief in each case. Petitioners appealed, and their appeals were consolidated.

The three-judge panel that initially heard this appeal held that it could not consider the juror questionnaires or the transcript of the first day of voir dire—even though those materials were before the state trial court—because they were not presented to the California Court of Appeal. *McDaniels v. Kirkland*, 760 F.3d 933, 941–42 (9th Cir. 2014). We had previously held in an unrelated case, however, that a federal habeas court may consider evidence that was before the state trial court, whether or not that evidence was subsequently presented to a state appellate court. *Jamerson v. Runnels*, 713 F.3d 1218, 1226–27 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 1285 (2014). Faced with this tension, we granted rehearing en banc. *McDaniels v. Kirkland*, 778 F.3d 1100, 1101 (9th Cir. 2015).

## II.

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, sharply limits the availability of federal habeas relief. We may not grant habeas relief to "a person in custody pursuant to the judgment of a State court . . . with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state-court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "(2) resulted in a

---

**²** The questionnaires completed by venire members who were not selected as jurors or alternates were destroyed at some point after trial.

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A *Batson* challenge may implicate either or both prongs of § 2254(d).

## III.

We first consider whether the California Court of Appeal's decision was "contrary to" or "an unreasonable application of" clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d)(1). We conclude that it was not.

## A.

Petitioners argue that the California Court of Appeal should have augmented the appellate record sua sponte to conduct comparative juror analysis based on the entire record of voir dire.[3] In their view, the California Court of Appeal's failure to conduct a comprehensive comparative juror analysis sua sponte renders that court's decision contrary to or an unreasonable application of the Supreme Court's decision in *Batson v. Kentucky*, 476 U.S. 79 (1986), within the meaning of § 2254(d)(1). We reject this argument because no clearly established Supreme Court precedent at

---

[3] The State perhaps could have asserted procedural default to prevent us from reaching this argument because Petitioners did not ask the California Court of Appeal to augment the record with the missing voir dire records at the time of their direct appeals. Because the State has not asserted procedural default either before the district court or on appeal, however, we proceed to address Petitioners' argument on its merits. *See Hughes v. Idaho State Bd. of Corr.*, 800 F.2d 905, 906 n.1 (9th Cir. 1986) ("A state may waive procedural default by failing to raise it in federal court." (citing *Batchelor v. Cupp*, 693 F.2d 859, 864 (9th Cir. 1982)).

the time of the California Court of Appeal's decision in 2003 required state courts to conduct a comprehensive, sua sponte comparative juror analysis.

*Batson* itself neither engaged in nor required comparative juror analysis. "*Batson* did not specify the *form* of the trial court's inquiry into the prosecutor's motive, only that it must 'undertake a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'" *Murray v. Schriro*, 745 F.3d 984, 1004 (9th Cir. 2014) (quoting *Batson*, 476 U.S. at 93). Indeed, *Batson* specifically "decline[d] . . . to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges." *Batson*, 476 U.S. at 99. Not until 2005—after the California Court of Appeal decision at issue here—did the Supreme Court even use comparative juror analysis to adjudicate a *Batson* claim. *See Miller-El v. Dretke*, 545 U.S. 231 (2005). As a consequence, as to state-court decisions made prior to *Miller-El*, we have "already addressed and rejected" the argument that state courts "unreasonably applied clearly established federal law when they declined to conduct a comparative juror analysis." *Jamerson v. Runnels*, 713 F.3d 1218, 1224 n.1 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 1285 (2014).[4]

Petitioners nevertheless argue that *Green v. LaMarque*, 532 F.3d 1028 (9th Cir. 2008), stands for the proposition that *Batson* requires comparative juror analysis. It does not. We

---

[4] To the extent that our treatment of *Miller-El* in *Kesser v. Cambra*, 465 F.3d 351, 361 (9th Cir. 2006) (en banc), may have implied otherwise, we now clarify that state court decisions issued prior to *Miller-El* did not contravene clearly established law by declining to conduct a comparative juror analysis.

stated in *Green* that "the [state] trial court failed to undertake 'a sensitive inquiry into such circumstantial and direct evidence of intent as may be available,' including a comparative analysis of similarly situated jurors, as required by clearly established Supreme Court law at the time of the trial." *Id.* at 1030 (quoting *Batson*, 476 U.S. at 93). This statement may have been ambiguous as to whether *Batson*'s "sensitive inquiry" requires comparative juror analysis, but, as we later explained, "the better reading of *Green* is that a comparative juror analysis is one of many tools available to undertake such a 'sensitive inquiry.'" *Murray*, 745 F.3d at 1005 n.3. In *Green*, the state court had entirely "failed to reach step three in the *Batson* analysis." 532 F.3d at 1031. In explaining the state court's error, we noted that *Batson*'s third step "*may* include a comparative analysis of the jury voir dire and the jury questionnaires of all venire members." *Green*, 532 F.3d at 1030 (emphasis added). This permissive language cuts against the idea that *Batson*'s third step *must* include comparative juror analysis. In this light, *Green* stands for the proposition that a state court *must* evaluate a prosecutor's proffered race-neutral justifications for peremptory strikes, and that this evaluation *may* include comparative juror analysis—not that a state court *must* conduct comparative juror analysis.[5]

---

[5] In the same vein, the California Court of Appeal was not required to augment the appellate record, sua sponte, to incorporate the entire transcript of voir dire given that Petitioners were not at the time making arguments that explicitly compared jurors who were stricken with those who were not. Petitioners' reliance on *Boyd v. Newland*, 467 F.3d 1139, 1142–43 (9th Cir. 2006), to argue otherwise is misplaced. In *Boyd*, the "[p]etitioner filed three requests to supplement the record to include the entire voir dire transcript. . . . But the court of appeal denied [the] [p]etitioner's requests." *Id.* *Boyd* has no application in cases like this one, in which there was never an effort to place the entire voir dire transcript

Of course, the Supreme Court's *Batson* jurisprudence has evolved since the California Court of Appeal's 2003 decision at issue here. As the California courts have recognized, *see People v. Lenix*, 187 P.3d 946 (Cal. 2008), more recent developments in the law—most notably the Supreme Court's 2005 decision in *Miller-El*—have clarified the role that comparative juror analysis plays in the adjudication of *Batson* claims. We have no need to address here the extent to which decisions like *Miller-El* may have established a rule that, when appropriately raised by the parties, "[c]omparative juror analysis . . . must be considered when reviewing claims of error at [*Batson*'s] third stage," *Lenix*, 187 P.3d at 950, 961. For present purposes all that matters is that, in 2003, Supreme Court precedent did not clearly require courts to undertake a comprehensive comparative juror analysis, sua sponte, in adjudicating a *Batson* claim.

**B.**

McDaniels also argues that the state trial court impermissibly combined *Batson*'s second and third steps—the prosecutor's proffering of race-neutral reasons, and the trial court's evaluation of those reasons—and that the

---

before the appellate court, or to make arguments that required evaluation of more of the record than was placed before it.

Had Petitioners been making arguments that required consideration of more of the record, the California Court of Appeal's failure to augment the record might in and of itself have implicated § 2254(d)(2). Flaws in a state court's fact-finding process may mean that the court's decision was based on an unreasonable determination of the facts within the meaning of that provision. *See Hurles v. Ryan*, 752 F.3d 768, 790–91 (9th Cir.), *cert. denied*, 135 S. Ct. 710 (2014); *Milke v. Ryan*, 711 F.3d 998, 1007–10 (9th Cir. 2013); *Taylor v. Maddox*, 366 F.3d 992, 1000–01 (9th Cir. 2004).

California Court of Appeal contravened *Batson* by failing to correct this error.  We reject this argument, which reads the state trial court's decision too uncharitably.

Combining *Batson*'s second and third steps would have been contrary to clearly established Supreme Court precedent. *See Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam) (a court "err[s] by combining *Batson*'s second and third steps into one"); *see also McClain v. Prunty*, 217 F.3d 1209, 1223 (9th Cir. 2000) (explaining that because "*Batson* [held] that a trial court has 'the *duty* to determine if the defendant has established purposeful discrimination,'" "[a] court's refusal to second-guess the prosecutor's reasons for exercising a peremptory challenge" is contrary to *Batson*) (quoting *Batson*, 476 U.S. at 98).  But we do not read the state trial court's ruling as having combined *Batson*'s second and third steps.  The state trial court clearly addressed *Batson*'s second step, by finding that the prosecutor "articulated specific reasons other than race based reasons for exercising his peremptory challenges."  The state trial court additionally found that there "didn't appear here to be any type of racism going on," which, though laconic, addressed *Batson*'s third step.  It would make little sense to read this latter statement as addressed to *Batson*'s second step, because whether there actually was "any type of racism going on" in the prosecution's peremptory challenges is a different question from whether the prosecution offered race-neutral justifications for those challenges in the first place.  The fairest reading of the state trial court's ruling is therefore that the court did find that the prosecution's proffered race-neutral justifications were genuine, even if its finding was terse.  We will not strain to read the trial court's decision otherwise, for AEDPA "demands that state-court decisions be given the

benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).

Indeed, the brevity of the state trial court's ruling at *Batson*'s third step seems easier to understand when considered in context. The trial court's terseness in ruling on the *Batson*/*Wheeler* challenges mirrored defense counsel's terseness in making those challenges in the first place. In raising their *Wheeler* objections, Petitioners identified seven African-American prospective jurors who were struck from the venire. The prosecution then gave a series of justifications—spanning five pages of transcript—defending its peremptory strikes. Faced with this extended explanation, Petitioners said almost nothing in response. Jenkins's trial counsel said only, "Submitted, your honor," without making any further argument. McDaniels's counsel asserted that "[it] sounded to me as if the only reason [the prosecution] challenged [prospective juror Reeves] peremptorily was because he was an African-American," and also that "I saw no hesitation when [the prosecution] asked [Reeves] those questions," but said little else. Given that defense counsel said almost nothing, it is understandable that the state trial court did not say more.

Because the trial court did not combine *Batson*'s second and third steps, the California Court of Appeal could not have contravened *Batson* by failing to correct a non-existent error. Accordingly, the California Court of Appeal's decision was not "contrary to" or "an unreasonable application of" clearly established federal law under 28 U.S.C. § 2254(d)(1).

**IV.**

Having resolved petitioners' challenges to the California Court of Appeal's decision under 28 U.S.C. § 2254(d)(1), we next consider whether the Court of Appeal's decision was based on an "unreasonable determination of the facts" within the meaning of 28 U.S.C. § 2254(d)(2). To be clear, our holding that the California Court of Appeal's failure to conduct a comparative juror analysis did not contravene law clearly established in 2003 does not resolve whether comparative juror analysis may reveal that the state court's decision rested on an unreasonable determination of the facts for purposes of § 2254(d)(2).

A federal court on habeas review of a *Batson* claim must consider the "'totality of the relevant facts' about a prosecutor's conduct" to determine whether the state court reasonably resolved *Batson*'s final step. *Miller-El v. Dretke*, 545 U.S. 231, 239 (2005) (quoting *Batson v. Kentucky*, 476 U.S. 79, 94 (1986)). The prosecution's treatment of minority jurors as compared to its treatment of nonminority jurors is among the facts indicative of the presence of a purpose to discriminate. *See id.* at 241 ("If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step."). And, because "we are separated by time and distance from the proceedings," this comparative analysis is often the best if not "the only means we will have for assessing the state court's factfinding." *Murray v. Schriro*, 745 F.3d 984, 1005 (9th Cir. 2014). A comparative analysis of the treatment of jurors may therefore be central to a federal court's review of whether a state court's findings as to purposeful

discrimination were reasonable, regardless of the fact that the state court was not required by clearly established law to perform such comparisons. *See id.*

*Miller-El* itself demonstrated that a comparative juror analysis may be relevant to, if not dispositive of, a federal court's § 2254(d)(2) analysis in the context of a *Batson* claim. The Supreme Court therein conducted a comparative juror analysis in the first instance in the course of analyzing the reasonableness of the state court's factual determinations under § 2254(d)(2). *Miller-El*, 545 U.S. at 240–52. These side-by-side panelist comparisons, along with other circumstantial evidence of discriminatory intent, led the Supreme Court to conclude that the state court's finding that the juror strikes were not racially motivated was "unreasonable as well as erroneous." *Id.* at 266.

Similarly, it is well settled in our jurisprudence that comparative juror analysis is an important tool for assessing the state court's factual determinations under § 2254(d)(2). *See Murray*, 745 F.3d at 1005 ("[I]n order for *us* to discharge our responsibility under AEDPA to review a *Batson* claim under section 2254(d)(2), we often will have to conduct a formal comparative juror analysis[.]"). Our application of this tool on habeas review has, in some instances, revealed racial motivations behind peremptory strikes that convincingly undermined the prosecutor's stated justifications, *see, e.g.*, *Ali v. Hickman*, 584 F.3d 1174 (9th Cir. 2009), *Green v. LaMarque*, 532 F.3d 1028 (9th Cir. 2008), and in others led us to uphold state court findings of lack of discrimination, *see, e.g.*, *Jamerson v. Runnels*, 713 F.3d 1218 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 1285

(2014); *Cook v. LaMarque*, 593 F.3d 810 (9th Cir. 2010); *Briggs v. Grounds*, 682 F.3d 1165 (9th Cir. 2012).**[6]**

In *Jamerson*, we set forth the procedure through which we carry out such a review when the state courts declined to conduct a comparative juror analysis in the first instance. First, "we must perform . . . the comparative analysis that the state court declined to pursue. Then, we must reevaluate the ultimate state decision in light of this comparative analysis and any other evidence tending to show purposeful discrimination" to decide whether the decision rested on objectively unreasonable factual determinations. *Jamerson*, 713 F.3d at 1225.

Our examination of the circumstantial evidence of discriminatory intent in this case, however, would be stymied were our review limited to the incomplete record presented to the Court of Appeal. Accordingly, before we can conduct our § 2254(d)(2) analysis for the *Batson* claims at issue here, we

---

**[6]** In each of these cases, our application of comparative juror analysis was prompted by arguments that the petitioner made in support of his habeas petition. It was in that context—when presented with arguments comparing the disparate treatment of different jurors—that we stated in *Kesser v. Cambra*, 465 F.3d 351 (9th Cir. 2006) (en banc): "*Miller-El . . .* made clear that the comparative analysis is required even when it was not requested or attempted in the state court." *Id.* at 361; *see also Jamerson*, 713 F.3d at 1224 (stating when presented with comparative juror arguments that, "[a]s part of its evaluation of the prosecutor's reasoning, the court must conduct a comparative juror analysis—that is, it must 'compar[e] African American panelists who were struck with those non-African American panelists who were allowed to serve.'" (quoting *Briggs*, 683 F.3d at 1170)). Neither *Kesser* nor *Jamerson* had occasion to opine on a situation in which comparative juror analysis was not raised by the parties, and, because such a situation is not presented here either, we likewise have no need to do so.

must address the question of the scope of the state-court record that a federal court may consider in exercising habeas review.

## A.

Petitioners argue that the record we should consult in evaluating their *Batson* claims includes the questionnaires for seated and alternate jurors and the transcript of the first day of voir dire—materials that they did not present to the California Court of Appeal. The State disagrees, arguing that *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), forbids consideration of materials that were not before the California Court of Appeal. We hold that the entirety of the existing state-court record should be considered.

In *Pinholster*, the Supreme Court considered whether AEDPA "permits consideration of evidence introduced in an evidentiary hearing before [a] federal habeas court." 131 S. Ct. at 1398.[7] The Court concluded that it does not. *Id.* The Court emphasized that the "backward-looking language" in § 2254(d) "requires an examination of the state-court decision at the time it was made," and that "[t]he federal habeas scheme leaves primary responsibility with the state courts." *Id.* at 1398–99. Based on these concerns, the Court held that review under AEDPA "is limited to the record that was

---

[7] Specifically, the Court considered "whether review under § 2254(d)(1)" permits consideration of such evidence. *Pinholster*, 131 S. Ct. at 1398. As we have previously recognized, however, the evidentiary limitation described in *Pinholster* applies with equal force under § 2254(d)(2). *Gulbrandson v. Ryan*, 738 F.3d 976, 993 n.6 (9th Cir. 2013); *see also Pinholster*, 131 S. Ct. at 1400 n.7.

before the state court that adjudicated the claim on the merits." *Id.* at 1398.

In *Jamerson* we examined whether *Pinholster* forbade us from considering evidence that was not presented to the state appellate court if that evidence (or equivalent evidence) had been presented to the state trial court. Specifically, the habeas petitioner in *Jamerson* asked us to consider—in ruling on his *Batson* claim—"driver's license photographs that [he] submitted to show the race of each venire member." *Jamerson*, 713 F.3d at 1226. The photographs in question had not been presented to the California Court of Appeal. Instead, that court had reviewed only "the transcripts of voir dire, which did not reveal the racial makeup of the entire jury venire." *Id.* The State argued in *Jamerson* that, because the California Court of Appeal "did not know the race of each jury venire member," *Pinholster* forbade us from considering the photographs. *Jamerson*, 713 F.3d at 1226. We disagreed, holding that "*Pinholster* allows us to consider photographs that show the racial composition of a jury venire to the extent that those photographs merely reconstruct facts visible to the state trial court that ruled on the petitioner's *Batson* challenge." *Id.* at 1227. In other words, we held that *Pinholster* allowed us to consider information that was available to the state trial court, even if that information was not also presented to the state appellate court.

Today we reaffirm our reasoning in *Jamerson*. Federal courts sitting in habeas may consider the entire state-court record, not merely those materials that were presented to state appellate courts. As *Jamerson* correctly explained, "*Pinholster*'s concerns are not implicated" when a federal habeas court is asked to consider evidence that was presented to the state trial court, whether or not that evidence was

subsequently presented to a state appellate court. *Jamerson*, 713 F.3d at 1226–27. "*Pinholster* itself precluded review only of evidence that was never revealed in *any* state court proceeding," *id.* at 1227, and the Supreme Court's reasoning counsels against extending its holding beyond that scenario. *Pinholster* turned on the observation that habeas review under AEDPA is "backward-looking," requiring "an examination of the state-court decision at the time it was made." 131 S. Ct. at 1398. The Supreme Court thus held that "the record under review is limited to the record in existence at that same time." *Id.* Such backward-looking review does not limit our ability to consider a state-trial-court record that existed at the time a state-appellate-court decision was made.[8] Nor does consultation of that record implicate *Pinholster*'s broader commitment to "ensuring that the state's consideration of a petitioner's claims [a]re the 'main event' rather than a 'tryout on the road' to federal court." *Jamerson*, 713 F.3d at 1226 (quoting *Pinholster*, 131 S. Ct. at 1398–1401). That commitment reflects a concern with the division of authority between state and federal courts, not a concern with the division of authority between two different state courts.

In short, as we held in *Jamerson*, "nothing in *Pinholster* inherently limits this court's review to evidence that the state appellate court—as opposed to the state trial court—considered." 713 F.3d at 1227.

---

[8] This is particularly true where, as here, the state appellate court could have exercised its discretionary authority to augment the record with the missing transcript and questionnaires. *See* Cal. R. Ct. 12 (2002). Our review is no broader than the inquiry the state appellate court had the authority and ability to conduct. Moreover, as noted above, the State has not argued that Petitioner's failure to ask the California Court of Appeal to augment the record amounted to a procedural default of any claim requiring review of the fuller record.

**B.**

Having clarified the scope of the record that should be considered in evaluating Petitioners' *Batson* claims, we are left with the need to implement this conclusion by conducting a § 2254(d)(2) analysis based on the entire state-court record. At the present juncture, we decline to express an opinion as to whether the failure to conduct a comparative juror analysis resulted in an unreasonable determination of the facts in this case, as we find it appropriate to leave this determination to be made by the original three-judge panel in the first instance.

"Although an en banc court takes a case, not an issue, en banc, it has the discretion to decide the entire case or only the parts of the case that formed the basis for the en banc call." *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1135 (9th Cir. 2006) (en banc) (citing *Summerlin v. Stewart*, 309 F.3d 1193, 1993 (9th Cir. 2002)). Remand to the original three-judge panel of issues extraneous to an en banc call is at times a useful mechanism to conserve judicial resources and achieve an expeditious resolution of issues on appeal. *Asherman v. Meachum*, 957 F.2d 978, 983 (2d Cir. 1992) (en banc); *see also Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1326 (9th Cir. 2015) (en banc) (returning the case to the original three-judge panel for consideration of additional issues raised on appeal); *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1207 (9th Cir. 2011) (en banc) (remanding to the three-judge panel to implement the en banc court's conclusion); *Confederated Bands and Tribes of Yakima Indian Nation v. Washington*, 550 F.2d 443, 449 (9th Cir. 1977) (en banc) (remanding the case "to the panel before which it initially was heard to consider the other issues involved"). Such is the case here, where our resolution of the narrow legal question that motivated the en banc call

broadens the factual record that remains to be evaluated. We therefore elect to send this appeal back to the previously assigned three-judge panel to address whether the California Court of Appeal reasonably adjudicated Petitioners' *Batson* claims within the meaning of § 2254(d)(2).

## V.

We have concluded that the California Court of Appeal's adjudication of Petitioners' *Batson* claims was not contrary to or an unreasonable application of *Batson*, or its pre-2003 progeny, within the meaning of § 2254(d)(1). We have also concluded that whether the California Court of Appeal's decision was based on an unreasonable determination of the facts within the meaning of § 2254(d)(2) would be more appropriately evaluated by the original three-judge panel than by this en banc panel, and we have clarified the scope of the record that the three-judge panel should consider in performing its review. We therefore return the case to the three-judge panel for further evaluation of Petitioners' *Batson* claims. We address Petitioners' remaining claims in a concurrently filed memorandum disposition.

**REMANDED to the three-judge panel.**

IKUTA, Circuit Judge, joined by TALLMAN, and CALLAHAN, Circuit Judges, concurring:

I write separately to address a question raised by the majority: whether *Miller-El v. Dretke* (*Miller-El II*), 545 U.S. 231 (2005), established a new procedural rule that a state court must use comparative juror analysis when adjudicating

a *Batson* claim, such that a failure to do so results in a decision that is "contrary to, or involved an unreasonable application of, clearly established Federal law" under 28 U.S.C. § 2254(d)(1). Maj. Op. at 13. For the reasons explained below, *Miller-El II* could not and did not establish any such rule.

AEDPA provides that a federal court may not grant habeas relief to "a person in custody pursuant to the judgment of a State court . . . with respect to any claim that was adjudicated on the merits in State court proceedings" unless that state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). When evaluating a claim under § 2254(d)(1), the Supreme Court has instructed us to measure state-court decisions against rules that were clearly established by the Supreme Court's precedents "as of the time the state court renders its decision." *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011) (internal quotation marks and emphasis omitted). Because "'clearly established Federal law' in § 2254(d)(1) 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision,'" *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)), "it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court," *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (quoting § 2254(d)(1)); *see also Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008) (indicating that a Supreme Court rule is not "clearly established" unless it

"squarely addresses" the issues in a case or gives a "clear answer to the question presented").

Under this framework, a Supreme Court decision establishes a new procedural rule binding on state courts only if the decision (1) squarely establishes a specific legal rule, and (2) the rule was necessary to the disposition of the case, and therefore is not merely dictum. The Supreme Court's decision in *Miller-El II* meets neither of these requirements.

In *Miller-El II*, a petitioner sought habeas relief, claiming that his *Batson* rights had been violated after the state court made a "determination of fact that the State's race-neutral explanations were true." 545 U.S. at 240. The Supreme Court did not ask whether the state court's decision was contrary to or an unreasonable application of *Batson* under § 2254(d)(1). Rather, the Supreme Court analyzed the claim as a factual question under § 2254(d)(2): whether the state court's application of *Batson* had involved an unreasonable determination of the facts. *Id.* Indeed, the Court stated that the prisoner could "obtain relief *only* by showing the Texas conclusion to be 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding'" under § 2254(d)(2). *Id.* (emphasis added). After making "side-by-side comparisons" of venire members who had been struck and allowed to serve, *id.* at 241, the Court determined that the state court had made an "unreasonable determination of the facts in light of the evidence presented" under 28 U.S.C. § 2254(d)(2), and therefore granted the writ. *Id.* at 266.

Because *Miller-El II* considered only whether the state court made an unreasonable factual determination, the Supreme Court did not discuss, let alone "squarely establish,"

a new procedural rule that state courts must conduct comparative juror analysis when evaluating a *Batson* claim. At no point did *Miller-El II* suggest that the state court in that case violated the petitioner's constitutional rights by failing to adhere to such a procedural rule.  Accordingly, because *Miller-El II* does not provide a "clear answer," *Van Patten*, 552 U.S. at 126, to the question whether a state court must conduct comparative juror analysis as part of its *Batson* inquiry, we cannot hold that a state court which fails to conduct comparative juror analysis violates clearly established Federal law, as determined by *Miller-El II*.

Even if a court concluded that *Miller-El II* somehow implicitly stands for the principle that state courts must always engage in comparative juror analysis when making a *Batson* inquiry, this principle would not be the Supreme Court's holding in that case.  While the Supreme Court issued its decision in *Miller-El II* in 2005, the state court rendered its underlying decision in 1992.  *Miller-El*, 545 U.S. at 237. Because "§ 2254(d)(1) requires federal courts . . . to measure state-court decisions against [Supreme Court] precedents as of the time the state court renders its decision," *Greene*, 132 S. Ct. at 44 (emphasis removed) (internal quotation marks omitted), the Supreme Court could not have granted the writ in *Miller-El II* on the ground the state court unreasonably applied any rule created by *Miller-El II*.  There is no dispute that at the time of the underlying state court decision, the Supreme Court had not enunciated a rule, implicit or otherwise, requiring comparative juror analysis in *Batson* inquiries.  For this reason, the *holding* of *Miller-El II* was that the state court made an unreasonable factual finding, not that it violated clearly established Supreme Court precedent.  Accordingly, even if it were possible to read *Miller-El II* as implicitly enunciating a procedural rule that

state courts must always engage in comparative juror analysis when conducting a *Batson* inquiry, such a rule would have been unnecessary to the Supreme Court's disposition in that case, and therefore not binding on state courts in the AEDPA context. *See Carey*, 549 U.S. at 74.

In recognition of these principles, we have held that "*Miller-El II* merely clarif[ied] *Batson* and [did] not establish new rules of criminal procedure." *Boyd v. Newland*, 467 F.3d 1139, 1146 (9th Cir. 2006). Said otherwise, "[t]his court has already addressed and rejected [the] argument" that a state court's failure to conduct a comparative juror analysis was an unreasonable application of clearly established federal law under § 2254(d)(1)." *Jamerson v. Runnels*, 713 F.3d 1218, 1224 n.1 (9th Cir. 2013); *see also Murray v. Schriro*, 745 F.3d 984, 1005 (9th Cir. 2014) (rejecting the habeas petitioner's claim that "a comprehensive, formal comparative juror analysis" was a "*per se* legal requirement of the Equal Protection Clause of the Fourteenth Amendment," because "*Miller-El* [*II*] did not establish any such principle of law").[1] This precedent is binding on any subsequent three-judge panel.

---

[1] At least two of our sister circuits have also reached this conclusion. *See, e.g.*, *Golphin v. Branker*, 519 F.3d 168, 186 (4th Cir. 2008) ("Contrary to [the petitioner's] belief, *Miller-El II* did not alter *Batson* claims in any way. *Miller-El II* itself was a case under AEDPA, so the Court, simply following clearly established federal law as AEDPA requires, could not have crafted a new legal standard."); *Murphy v. Dretke*, 416 F.3d 427, 439 (5th Cir. 2005) (noting that in *Miller-El II*, "[t]he Court did not announce any new elements or criteria for determining a *Batson* claim, but rather simply made a final factual and evidentiary determination of that particular petitioner's *Batson* claim pursuant to the 'demanding but not insatiable' standard set forth in 28 U.S.C. § 2254(d)(2)" (quoting *Miller El II*, 545 U.S. at 240)).

While *Miller-El II* did not establish a new constitutional rule for purposes of 28 U.S.C. § 2254(d)(1), it did suggest that a state court's failure to examine comparative juror evidence could, under some circumstances, result in an "unreasonable determination of the facts" under 28 U.S.C. § 2254(d)(2). *See, e.g.*, *Jamerson*, 713 F.3d at 1224–25 & n.1 (citing *Briggs v. Grounds*, 682 F.3d 1165, 1170 (9th Cir. 2012); *Cook v. LaMarque*, 593 F.3d 810, 816 (9th Cir. 2010); and *Ali v. Hickman*, 584 F.3d 1174, 1180–81 (9th Cir. 2009)). For this reason, we have suggested that "California courts may wish to revisit" their analysis of *Batson* claims in light of *Miller-El II*, even though *Miller-El II* did not create a new rule. *Kesser v. Cambra*, 465 F.3d 351, 360 n.3 (9th Cir. 2006) (en banc). While the failure to use comparative juror analysis would not render a state court's decision an unreasonable application of clearly established Supreme Court precedent under § 2254(d)(1), a state appellate court could be objectively unreasonable in concluding that a trial court's credibility determination was supported by substantial evidence, if it failed to use this or other ordinary techniques for reviewing the record as part of its *Batson* inquiry.

Because *Miller-El II* "only . . . clarified the extant *Batson* three-step framework," and did not "create a new rule of criminal procedure," *Boyd*, 467 F.3d at 1146, the majority creates needless confusion by suggesting that there might be an open question as to whether *Miller-El II* established a rule that "[c]omparative juror analysis . . . must be considered when reviewing claims of error at [*Batson*'s] third stage." Maj. op. at 13 (quoting *People v. Lenix*, 187 P.3d 946, 950, 961 (Cal. 2008). There is no such open question, because it is clear that *Miller-El II* established no such rule. I otherwise concur in the majority's opinion.